# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 1:22-CV-348 |
| TWENTY-NINE THOUSAND EIGHT HUNDRED DOLLARS AND 00/100 ($29,800.00) IN UNITED STATES CURRENCY, | : | |
| Defendant 1, | : | |
| and | | |
| ONE AUDEMARS PIGUET ROYAL OAK OFFSHORE STAINLESS STEEL WATCH WITH DIAMONDS, | : | |
| Defendant 2. | | |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendants in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

### NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce 21 U.S.C. § 881(a)(6), which provides for the forfeiture to the United States of the following:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

## THE DEFENDANTS IN REM

2. Defendant 1 is Twenty-Nine Thousand, Eight Hundred Dollars and 00/100 ($29,800.00) in United States Currency. On or about October 15, 2021, the Warren County Drug Task Force ("WCDTF") and the Shelby Township Police Department with the assistance of the Federal Bureau of Investigation ("FBI") seized Defendant 1 from the residence at 4123 South Lake Court, Shelby Township, Michigan, during the execution of a state search warrant. The United States has deposited Defendant 1 into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

3. Defendant 2 is an Audemars Piguet Royal Oak Offshore Stainless Steel Watch with Diamonds. On or about October 15, 2021, the WCDTF and the Shelby Township Police Department with the assistance of the FBI seized Defendant 2 from the residence at 4123 South Lake Court, Shelby Township, Michigan, during the execution of a state search warrant. The FBI will maintain custody of Defendant 2 during the pendency of this action.

## JURISDICTION AND VENUE

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendants under 21 U.S.C. § 881(a)(6). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the defendants under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

6. Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

**BASIS FOR FORFEITURE**

7. The defendants are subject to forfeiture under 21 U.S.C. § 881(a)(6) because they represent property furnished or intended to be furnished in exchange for a controlled substance, represent proceeds traceable to such an exchange, or were used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

**FACTS**

8. The FBI Cincinnati and Detroit field offices, the Drug Enforcement Administration ("DEA") Dayton, Ohio field office, and the WCDTF are investigating an interstate marijuana distribution network involved in the distribution of kilogram quantities of marijuana, which is led by Brandon Hana ("Hana") who lives in the Eastern District of Michigan.

9. Investigators have conducted a diligent search for information regarding Hana's ability to legally sell marijuana in Michigan and have found no evidence that Hana is licensed to sell marijuana or that he is employed by a licensed commercial cannabis business.

10. Hana has sold hundreds of thousands of dollars' worth of marijuana in the Southern District of Ohio since 2018. Specifically, Hana was the main source of supply for the Clendenin family in Franklin, Ohio.

11. A review of Hana's debit card transactions indicates that he personally traveled to Franklin, Ohio, on or about January 22, 2020; February 13, 2020; and March 17, 2020.

12. On or about December 8, 2020, law enforcement executed a search warrant at Scott and Carol Clendenin's residence in Franklin, Ohio, and discovered, among other items of evidentiary value, a trafficking quantity of marijuana, $162,868.00 in U.S. currency, firearms, drug ledgers, a money counter, and digital scales.

13. In August 2021, a confidential informant ("CI") with direct knowledge of Hana's drug trafficking organization met with Hana at the residence located at 4123 South Lake Court, Shelby Township, Michigan, Ohio ("South Lake residence"), to arrange an illegal drug transaction in which Hana would transport a large quantity of marijuana to the Southern District of Ohio.

14. The CI has provided information to investigators in the past that has proven to be reliable and truthful and that law enforcement has independently corroborated.

15. According to the CI, Hana claimed that the South Lake address was the residence of his friend, "Mike Jones." In reality, "Mike Jones" was a fictitious name that Hana used for Salem Asmar, a known drug trafficking associate of Hana.

16. The CI observed Hana and Salem Asmar in the garage of the South Lake residence and observed approximately five pounds of marijuana inside the garage, which were stored in "turkey bags."

17. Based on their training and experience, investigators know that plastic turkey bags are commonly used to store large amounts of marijuana and that legitimate marijuana distributers do not use them. Turkey bags hold approximately two to four pounds of marijuana and are used by drug dealers to store and transport bulk amounts of marijuana. Bulk marijuana (pound quantities) is typically broken down and stored in mylar or plastic bags (ounce quantities) that are often vacuum-sealed.

18. The CI stated that it was clear "Mike Jones" (Salem Asmar) was involved in selling marijuana with Hana based on their conversations and the items that the CI observed at the South Lake residence.

19. While inside the garage at the South Lake residence, the CI observed Hana and Salem Asmar smoking marijuana.

20. According to the CI, Hana discussed how they should resume selling marijuana in Ohio because they had made a substantial amount of money together in the past. The CI and Hana also discussed Hana bringing large shipments of marijuana to the Southern District of Ohio and that Hana was prepared whenever the CI was ready.

21. Although the CI and Hana did not discuss specifics about weight and price, the CI understood Hana was able to supply the CI with 50-100 pounds of marijuana based on their past transactions and the volume of product that Hana typically sold.

22. Investigators have conducted surveillance of the South Lake residence on multiple occasions during the day and night and have observed luxury vehicles, a Cadillac Escalade and a gray Mercedes sedan, parked in the driveway. In addition, investigators' observations indicated that the residents were home and that they did not appear to leave the residence for legitimate employment during normal working hours.

23. Investigators also observed the presence of numerous surveillance cameras surrounding all access points of the South Lake residence, which is in an affluent neighborhood and not in a high crime area. The neighboring houses did not appear to have security cameras.

24. Based on their experience, investigators know that individuals involved in drug trafficking frequently use cameras on their residences from which they conduct drug deals and/or store drugs or drug proceeds.

25. Although Michigan state records indicate that Hana had no legitimate ties to a marijuana selling company, he maintained an office at "Canna Boys," which is a marijuana distribution business located at 1300 Broadway Street, Floor 6, Detroit, Michigan.

26. A review of Hana's Instagram account showed video of Hana smoking marijuana in the "Canna Boys" office and a large stack of banded U.S. currency sitting on his desk.

27. Based on their training and experience, investigators know that a large stack of U.S. currency, secured with rubber bands, is consistent with narcotics proceeds.

28. On or about October 15, 2021, members of the Shelby Township Police Tactical Response Unit, the FBI Strike Force Unit, the DEA, and the WCDTF executed a state search warrant at the South Lake residence. Salem Asmar and his mother, Hwida Asmar, were located inside the residence.

29. During the execution of the search warrant, investigators discovered in the garage a gold money counter in plain view, a digital scale, a shoebox with new mylars bags, a tan bag containing approximately sixty-nine mylar bags filled with marijuana, ten boxes of THC cartridges, one jar of marijuana, a blue tote with seven turkey bags containing approximately seven pounds of marijuana, two containers of suspected marijuana "butter" in the garage freezer, and two digital scales with marijuana residue. Marijuana "butter" is commonly used to make marijuana edibles.

30. Hwida Asmar agreed to open a safe in her master bedroom and told a detective that her son (Salem Asmar) had property in the safe including a watch (Defendant 2), chain, and some money (Defendant 1). Hwida Asmar explained that some guys took her son's watch; therefore, his father (Issa Asmar) and Salem Asmar went to Chicago to purchase another watch.

31. A detective introduced himself to Salem Asmar and verbally advised him of his *Miranda* warnings. Salem Asmar claimed that the safe would contain approximately $5,000.00 to $6,000.00 and admitted that his watch and chain also were inside the safe. Salem Asmar told his mother that she should not have opened the safe for law enforcement.

32. Hwida Asmar stated that she did not know what Salem Asmar was doing in the garage but admitted that she had seen the gold money counter in plain view. Hwida Asmar

acknowledged that the gold money counter was the second one that Salem Asmar had at the residence because she had broken his previous money counter into pieces.

33. Hwida Asmar further stated that she knew something was going on and continued to tell Salem Asmar to stop dealing drugs. Salem Asmar then uttered, "You guys hit me at the wrong time. . . . I don't have anything."

34. Investigators later determined that Defendant 1, which was seized from the safe at the South Lake residence, totaled $29,800.00 and was comprised of $100.00 bills.

35. Upon executing a separate search warrant for the contents of Salem Asmar's phone, investigators discovered pictures of Salem Asmar inside the South Lake residence, which showed his drug trafficking activity in plain view and included pictures of him with firearms, large sums of U.S. currency secured with rubber bands, numerous pieces of jewelry, and large quantities of marijuana.

36. On or about December 16, 2021, Issa Asmar filed a claim and a petition for remission with the FBI, asserting an ownership interest in the defendants as proceeds of his vehicle repair business. Specifically, Issa Asmar stated under penalty of perjury that he purchased the watch (Defendant 2) in July 2020, as a financial investment, and that the seized currency (Defendant 1) was his personal savings that he accumulated over the last several years.

37. In support of his claim and petition for remission, Issa Asmar provided incomplete Forms 1040 for tax years 2019 and 2020. On his 2019 joint return, Issa Asmar reported adjusted gross income in the amount of $55,976 and taxable income in the amount of $10,810. On his 2020 joint tax return, Issa Asmar reported adjusted gross income in the amount of $30,771 and taxable income in the amount of $0.

38. The FBI's review of documents associated with the purchase of Defendant 2

revealed that the watch was purchased at New York Jewelers in Chicago, Illinois, on or about July 13, 2020.

39. Issa Asmar purportedly paid $41,000.00 for Defendant 2 in the year that he reported $0 in taxable income. Defendant 2 was purchased with $9,000.00 in cash, $17,000.00 by credit card, and $15,000.00 was financed.

40. Contrary to his 2020 tax return, Issa Asmar submitted a credit card application to the jewelry store in which he reported his total annual net income as $160,000.

41. Based on the foregoing facts, the United States asserts that the defendants are subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6) because they represent property furnished or intended to be furnished in exchange for a controlled substance, represent proceeds traceable to such an exchange, or were used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendants and to retain the same in its custody subject to further order of the Court;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendants to assert in conformity with the law a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c) the forfeiture of the defendants to the United States be confirmed, enforced, and

ordered by the Court;

      (d)    the Court thereafter order the United States to dispose of the defendants as provided by law; and

      (e)    the Court award the United States all other relief to which it is entitled, including the costs of this action.

      Respectfully submitted,

KENNETH L. PARKER
United States Attorney


s/Deborah D. Grimes
DEBORAH D. GRIMES (0078698)
Assistant United States Attorney
Attorney for Plaintiff
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
Deborah.Grimes@usdoj.gov

## VERIFICATION

I, Eric J. McIntosh, hereby verify and declare under the penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint for Forfeiture In Rem and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except that those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

Dated  06/14/2022

ERIC J. McINTOSH, Special Agent
Federal Bureau of Investigation